IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOYCE HICKMAN | § | |
| (BOP No. 88369-079) | § | |
| VS. | § | CIVIL ACTION NO.4:13-CV-797-O |
| | § | |
| DR. SERGIO MERCADO, M.D., et al. | § | |

OPINION and ORDER OF DISMISSAL UNDER 28 U.S.C. §§ 1915A(b)(1)
and UNDER 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii)
(With special instructions to the clerk of Court)

This case is before the Court for review of pro-se plaintiff and inmate Joyce Hickman's claims under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). The Court notified Hickman that her original complaint and attachments violated Federal Rule of Civil Procedure 8, and ordered her to file a form amended complaint with any attachments thereto. On November 27, 2013, Hickman filed a form amended complaint listing three defendants and stating briefly her claims against each person and her request for relief. (Amend. Compl.(AC) § IV(B).). At the same time, however, Hickman also filed a document entitled "Motion Requesting Relief Pursuant to 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, and 29 U.S.C. § 794, the Rehabilitation Act (Amended Complaint)." After review, as it appears that this document includes the detailed statements of Hickman's claims against the same three defendants listed in the form amended complaint, the Court will construe this document (ECF No. 12) as a supplement to the amended complaint.[1] Thus, the live pleadings subject to review in this case are Hickman's form amended complaint (AC), and her supplement thereto (AC-Supp.), both filed on November 27, 2013.

Hickman has named as defendants in this action three individuals associated with her medical care and treatment at FMC-Carswell: Sergio Mercado, M.D., clinical director; Maitee Serrano-

---

[1] The clerk of Court is directed to thus terminate the document as a motion.

Mercado, M.D., primary care doctor; and  Tracey Gualandi, physical therapist. (AC. Style; § IV(B); AC-Supp. at 3, 10, 13.).  Hickman complains of the defendants' response to her medical related issues, and in particular, the failure to authorize and provide to her a "rolling seated walker with swivel wheels." (AC-Supp. at 3.). She seeks an order from this Court that she be issued a "rolling seated walker with swivel wheels," that she be placed on "medically unassigned status until her condition improves," and that defendants "honor previous guarantees made by the Bureau of Prisons in case number 4:10-CV-527-A." (AC § VI.).

Hickman recites that she has a condition known as Raynaud's Phenomenon, described by her as a "vasospastic disorder with multiple symptoms," along with a diagnosis of connective tissue disease, and questionable Buerger's disease. (AC-Supp. 1-3.).  Hickman contends that her conditions cause her to suffer the following symptoms: violent spasms or contractions in her fingers and toes; discoloration in her fingers and toes due to lack of blood flow; bleeding and painful sores on her fingertips and toes; cyanosis and atrophy in her extremities; sloughing of the skin in her extremities; tiny slits in her skin; hypersensitive fingers and toes; extreme pain in performing daily activities; loss of sensation in the balls of her feet and toes resulting in modified walking; curbed movements throughout the facility; and nerve agitation.  (AC-Supp. 2.). Hickman is presently prescribed Plaquenil (400 mg), Nitroglycerin ointment, Nifedepine (90 mg), Aquaphor ointment, and aspirin (81 mg) daily. (AC-Supp. 2.). Hickman's overall complaint against the defendants collectively is that:

> (A) defendants, by failing to provide the petitioner with the recommended assistive device, namely the rolling seated walker with swivel wheels, by rescinding medical restriction of medically unassigned status, and other imperative medical restrictions, exhibited deliberate indifference and disability discrimination to petitioner in contravention of the petitioner's right to be free from cruel and unusual punishment secured by the Eight Amendment of the United States Constitution and 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment and 29 U.S.C. § 794, Section 504, the Rehabilitation Act; (B) defendants exhibited reckless disregard and

2

disability discrimination for petitioner's health, physical safety and welfare, causing her severe and agonizing pain and suffering, physical and psychological injuries by failing to secure her a rolling seated walker with swivel wheels and medical restriction that will safeguard her from future harm to her physical health; (C) defendants exhibited reckless disregard, deliberate indifference and disability discrimination for petitioner's welfare, health and physical safety by denying her the necessary treatment, namely, the rolling seated walker with swivel wheels and medical restrictions (i.e., medically unassigned, no exposure to cold weather, etc.) and petitioner has suffered repeated and continuous physical pain and suffering, and physical, psychological and emotional injuries, due to the defendants' actions in this regard. (AC-Supp. 3.)

As to the specific claims against each defendant, the Court will list those in more detail in the analysis below.

A complaint filed in forma pauperis that lacks an arguable basis in law should be dismissed under 28 U.S.C. § 1915.[2]  Under 28 U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed.[3]  Furthermore, as a part of the Prison Litigation Reform Act ("PLRA"), Congress enacted 28 U.S.C. § 1915A, which requires the Court to review a complaint from a prisoner seeking relief from a governmental entity or governmental officer or employee as soon as possible after docketing.[4]  Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its § 1915 inquiry.[5]  Rather, § 1915 gives judges the power to "dismiss a claim based on an

---

[2]*Neitzke v. Williams*, 490 U.S. 319,328 (1989). Section 28 U.S.C. § 1915(e) *requires* dismissal not only when an allegation of poverty is untrue or the action is frivolous or malicious, but also when "the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B)(West 2006).

[3]*See* 28 U.S.C.A. § 1915(e)(2)(West 2006); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996); *see also Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir. 1990)(discussing authority to dismiss at any time under prior § 1915(d)), *abrogation on other grounds recognized, Mosser v. Haney,* No.3-03-CV-2260-B, 2005 WL 1421440, at *7 (N.D. Tex. June 17, 2005)).

[4]*See* 28 U.S.C.A. § 1915A(a)(West 2006).

[5]*See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995).

3

indisputably meritless legal theory."[6]  After review of the amended complaint and supplement under these standards, the Court concludes that Plaintiff's claims must be dismissed.

Plaintiff Hickman has named each defendant in an individual and in an official capacity. To the extent the official capacity allegations are read as a claim that the defendants are responsible in an official capacity for violations of the Constitution, such claims are barred because they are considered suits against the United States which has not waived its sovereign immunity for such claims.[7] Thus, all Hickman's claims against the defendants in an official capacity must be dismissed.

Although inmate Hickman has asserted her claims as seeking relief under 42 U.S.C. § 1983, as she asserts claims for violation of her constitutional rights against individual federal government defendants, the Court has construed the claims as seeking relief under *Bivens* v. *Six Unknown Named Agents of the Federal Bureau of Narcotics ("Bivens")*.[8]  In order to assert a claim for relief for violation of federal constitutional rights under *Bivens,* a plaintiff must set forth facts in support of both of its elements: (1) the  deprivation of a right secured by the Constitution or laws of the United States; and (2) the deprivation was imposed by a person acting under color of law.[9] Plaintiff Hickman has failed to satisfy the first element as to any of her claims.

*Claims Related to Prior Suit*

With regard to Hickman's claims that the three individual defendants in this case honor the

---

[6]*Id* (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[7]*See Kentucky v. Graham,* 473 U.S. 159, 165-67 (1985); *see also Ischy v. Miles,* 75 F App'x.  257, 258(5th Cir. 2003)(citing *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 286 (5th Cir. 1999)("suits against the United States brought under the civil rights statutes are barred by sovereign immunity")).

[8]403 U.S. 388, 297 (1971). *Bivens,* of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n. 10(5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials"), *overruled on other grounds, Castellano v. Fragozo,* 352 F.3d 939, 948-49 & n. 36 (5th Cir. 2003), *cert den'd,* 543 U.S. (2004).

[9]*See West v. Atkins,* 487 U.S. 42, 48 (1988)(elements of § 1983 action); *Evans,* 168 F.3d at 863 n. 10.

guarantees made by the Bureau of Prisons in case number 4:10-CV-527-A, the Court notes that this claim is baseless for a number of reasons. First, that case, a petition for writ of habeas corpus under 28 U.S.C. § 2241, was ultimately dismissed as moot, as the Court then concluded that "the parties all agree that Hickman has received the relief she requested."[10] Thus, that case did not remain open and the Court did not order prospective ongoing relief. In fact, the Court expressly rejected Hickman's claim for assurance that no future violations could recur, noting "the 'mere possibility of future consequences is too speculative' to give rise to an active case or controversy."[11] Second, the three individual defendants in this case were not parties to the prior suit, and are thus, not bound by that case. Furthermore, Hickman has not made any factual allegations that any defendant is specifically failing to do anything referenced in the Court's Order resolving the prior case. Thus, Hickman's claims related to any prior lawsuit will be dismissed.

*Eighth Amendment*

Hickman claims that she was deprived of her rights under the Eighth Amendment to the Constitution. Deliberate indifference to a prisoner's serious medical needs has been deemed to amount to cruel and unusual punishment under the Eighth Amendment.[12] Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants."[13] This subjective deliberate-indifference standard is now equated with the standard for criminal recklessness:

[A] prison official cannot be found liable under the Eighth Amendment for denying

---

[10] *Hickman v. United States,* No.4:10-CV-527-A (N.D.Tex. September 8, 2010)(McBryde, J.) The Court takes judicial notice of the records of this case. *See* Fed. R. Evid. 201(b)(2).

[11] *Id.* at n.1.

[12] *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).

[13] *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[14]

Consistent with this standard is the recognition that negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil-rights action.[15]

Hickman's allegations do not give rise to a claim of deliberate indifference to her serious medical needs. With regard to Tracey Gualandi, physical therapist, Hickman alleges that she has refused to provide to her a "rolling seated walker with swivel wheels" [and] rescinded "medical restriction of medically unassigned status." (AC-Supp. at 3.). But Hickman acknowledges that she was provided the seated walker by defendant Gualandi as a part of an effort to achieve the goal of "desensitizing [Hickman's] hands and feet in eight weeks." (AC-Supp. at 3.). Hickman also acknowledges that Gualandi placed conditions on her continued use of the seated walker, namely that Hickman use a "semi recumbent bike for ten minutes" in order that Hickman would not "become to dependent on the walker." (AC-Supp. at 4.).  Hickman also admits that she "protested" against having to ride the bike and "having to put her very sore feet into the strapped pedals of the bike and push down to make a circular motion." (AC-Supp. at 4.).

Hickman writes of particular details of her interaction with Gualandi regarding the use-or-not of a rolling seated walker for over six tightly spaced pages of text. (AC-Supp. at 4-10). Hickman claims Gualandi was verbally abusive, refused the walker at times, and in other times provided the

---

[14]*Farmer v. Brennan,* 511 U.S. 824, 837 (1994); *see also Hare v. City of Corinth,* 74 F.3d 633, 648 (5th Cir. 1996)(*en banc*), *opinion after subsequent remand,* 135 F.3d 320, 327 (5th Cir. 1998).

[15]*See Estelle,* 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *see also Varnardo v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991)(unsuccessful medical treatment, neglect, nor medical malpractice give rise to a § 1983 cause of action)(citations omitted).

walker. A review of these factual allegations shows that defendant Gualandi was attempting to take measures to encourage Hickman to "walk without the walker." (AC-Supp. at 4.). Hickman recites that Gualandi failed to follow the recommendations as to provision of the walker by Dr. Barron, Dr. Gonzalez, and by other physical therapists. But Hickman also acknowledges that Gualandi did so because she did not want Hickman to become dependant on a walker, and believed that a walker "was not clinically indicated" for Hickman. (AC-Supp. at 4-5, 8-9.).

Hickman's factual allegations against Gualandi amount to nothing more than disagreement between her and Gualandi as to what medical care is appropriate, and/ or facts that show that the response received to some of her medical care issues was not reasonable. But, negligence or medical neglect does not state a claim under the Eighth Amendment, and disagreement between an inmate and his medical care providers as to what medical care is appropriate does not state a claim for Eighth Amendment indifference to medical needs.[16] Any deficiency in the determination of the treatment of Plaintiff by Gualandi does not approach the deliberate-indifference standard.[17] As a result, Hickman's Eight Amendment claim against Gualandi must be dismissed.

With regard to defendant Maitee Serrano-Mercado. M.D., Hickman makes several factual allegations. She alleges that, as therapist Gualandi's supervising physician she "condoned the denial of the seated walker." (AC-Supp. at 13.). This allegation fails for the same reasons discussed above. Hickman also alleges that although she was assigned to defendant Serrano-Mercado's case load, defendant never examined Hickman because she was under the care of rheumatology specialist Dr.

---

[16]*See Norton v. Dimazana,* 122 F.3d 286, 292 (5thCir. 1997)(affirming the dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment); *see also Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995)(citing *Varnado,* 920 F.2d at 321); *see also Street V. Corrections Corp. of America,* 102 F.3d 810, 816 n.13 (6th Cir. 1996)(patient's disagreement with his physicians over the proper medical treatment alleges nothing more than a medical malpractice claim, and is not cognizable as a constitutional claim.)

[17]*See generally Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.)(doctor's failure to discover inmate's ulcer, failure to read nurses's notes regarding inmate's incontinence problems, or to ensure that orders were carried out, might constitute negligence, but not deliberate indifference).

Melanie Barron, M.D. (AC-Supp. at 10.). But Hickman then acknowledges that she was seen by specialist Dr. Barron regularly, and listed Dr. Barron's observations and orders for Hickman, including "recommendations" for "socks and gloves." (AC-Supp. at 11.). Hickman claims she wrote up an administrative request in January 2013 for Dr. Serrano-Mercado and "simply requested the defendant to do as the rheumatologist advised as it related to thicker socks and gloves." (AC-Supp. at 11.). Hickman alleges she was then provided three pairs of diabetic socks, but was also given a "revised medical duty status form that indicated that [Hickman] was no longer medically unassigned and was able to work." (AC-Supp. at 11.). Hickman writes that a mid-level practitioner then told her that Dr. Serrano-Mercado placed her on work status as "form of punishment for [Hickman] exercising her constitutional right to seek redress for inadequate medical care." (AC-Supp. at 11.). Hickman then relates that after she raised additional administrative appeals, defendant Serrano-Mercado put Hickman "on medical convalescence for four months with the stipulation that [Hickman] had until July 31, 2013 to REHABILITATE." (AC-Supp. at 12.).

Although Hickman alleges this factual record displays more than a disagreement between defendant and the specialist regarding the appropriate care and duty restrictions for her, that is in fact all that is set forth in this detailed litany. Hickman writes that her treating specialist, Dr. Barron, made several notes about Hickman's condition, including that Hickman's symptoms were "controlled and persistent," were consistent with "Connective Tissue Disease," admonished Hickman to avoid cold and transient temperature, provided prescriptions for Nifedepine and Plaquenil, and gave recommendations for physical and occupational therapy, and for socks and gloves. (AC-Supp. at 11.). But, Hickman does not contend that Dr. Barron ordered that Hickman not work or not be given a duty assignment. Like physical therapist Gualandi, defendant Serrano-Mercado appears to have been placing Hickman on duty status in an effort to help Hickman rehabilitate. That Hickman did not agree

8

with this approach does not make it deliberate indifference. Rather, Hickman has chronicled a potential difference of opinion between defendant Serrano-Mercado and Dr. Barron as to Hickman's activities and duties.  This factual recitation also does not state a claim of deliberate indifference. Hickman's Eighth Amendment claims against defendant Serrano-Mercado must be dismissed.

With regard to Sergio Mercado, M.D., the clinical director at FMC-Carswell, Hickman alleges first that as he condoned the decision to deny her a seated walker, he subjected her to deliberate indifference. (AC-Supp. at 13.).  This claim as to defendant Sergio Mercado is rejected for the same reasons as explained above as to defendant Gualandi.  Next, Hickman alleges that Sergio Mercado has demonstrated deliberate indifference by "striping her of her medical convalescence and other imperative medical restrictions" guaranteed to her in former case number 4:10-CV-527-A.  This claim is rejected for the reasons explained earlier. Sergio Mercado was not a party to the prior suit, and the prior Court did not order prospective relief.

Lastly, Hickman contends that because Sergio Mercado was previously her primary care doctor, and that while serving as clinical director has "approved over five visits to outside specialists in a six month time span," he is deliberately indifferent to her medical needs because he has  failed to accept one of "two diametrically opposite sets of noted symptoms and prognoses" for her. (AC-Supp. at 14.).  In essence, Hickman alleges that the medical care and treatment for her, and the associated expectations and duty restrictions for her, are being guided by the approach of the physical therapist Gualandi and unit team mangers, rather than that recommended by the rheumatology specialist and primary care provider. Hickman alleges that Clinical Director Mercado has accepted the former view and thus is intentionally treating her incorrectly.

As is evident throughout Hickman's pleadings, these factual and conclusory allegations against Dr. Sergio Mercado recite only a detailed and ongoing disagreement about the proper

approach to medical care for inmate Hickman. As she alleges nothing more than a disagreement about the extensive medical care and treatment that is being provided to her, she has not stated claims of deliberate indifference against defendant Sergio Mercado. The Eighth Amendment claims against Sergio Mercado must be dismissed.

*Equal Protection*

Hickman also claims that she has been subjected to a violation of the right to equal protection under the Fourteenth Amendment. (AC-Supp. 1.). The equal protection language of the Fourteenth Amendment applies to the states, and thus does not provide Hickman a source for relief.[18] Hickman has now recognized this by filing a document called a "Motion for Correction of Error" in which she asks the Court to consider her claim under the equal protection component of the Due Process clause of the Fifth Amendment. This motion (ECF No. 12) is GRANTED to the extent that Hickman's claims for violation of her right to equal protection will be considered.[19]

"The Fifth Amendment applies to the federal government a version of equal protection largely similar to that which governs the states under the Fourteenth Amendment."[20] The Supreme Court has recognized that it's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."[21] Hickman claims that she was denied her right to equal protection of law because other inmates were provided a seated

---

[18]*See Richard v. Hinson,* 70 F.3d 415, 417 (5th Cir. 1995)("The Fourteenth Amendment protects against actions by states, but here, the federal government is the subject of petitioner's complaints making the Fourteenth Amendment inapplicable").

[19]The clerk of Court is directed to terminate this motion on the docket.

[20]*Rodriguez-Silva v. INS,* 242 F.3d 243, 247 (5th Cir. 2001); *see also Hinson,* 70 F.3d at 417 ("We employ the same test to evaluate alleged equal protection violations under the Fifth Amendment as we do under the Fourteenth Amendment")(citing *Adarand Constructors, Inc. V. Pena,* 515 U.S. 200, 215-17 (1995))(other citation omitted).

[21]*Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n.2 (1975)(citing *Schlesinger v. Ballard,* 419 U.S. 498 (1975); *Jimenez v. Weinberger,* 417 U.S. 628, 637 (1974); and *Frontiero v. Richardson*, 411 U.S. 677 (1973)).

walker with swivel wheels, that other inmates are medically unassigned, and that other inmates receive special housing conditions or devices for certain medical conditions. (AC-Supp. at 15-18.).

An equal-protection violation may occur when the government treats someone differently than another who is similarly situated.[22] In order to show a violation of her equal protection rights, plaintiff Hickman must show purposeful discrimination resulting in a discriminatory effect among persons similarly situated.[23] She must allege the "existence of purposeful discrimination, which implies that the decision maker selected a particular course of action at lest in part because of the adverse impact it would have on an identifiable group."[24] Hickman has not alleged that she was subjected to a discriminatory action on the basis of race, religion or other suspect class, and her claims that she was treated differently than other similarly situated inmates, upon closer inspection, do not support an equal-protection claim.

In this regard, as to the claim that some inmates actually are provided seated walkers with swivel wheels, Hickman identifies them as "other disabled inmates with less serious medical needs than [her]." (AC-Supp. 16.). She acknowledges that such inmates include "disabled inmates [with] joint pain, knee pain, back pain, shoulder pain, and muscle spasms." (AC-Supp. 16-17.). Missing from Hickman's list is other inmates who are diagnosed with Raynaud's Phenomenon. Also, as to Hickman's claim that she is not receiving a medically unassigned status when other inmates have been provided such status, she acknowledges that she has been given temporary unassigned status, but lost that assignment due to her "non-compliance in treatment." (AC-Supp. 17.). And, as to her

---

[22]*City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

[23]*McCleskey v. Kemp,* 481 U.S. 279, 292, 298 (1987); *see also Muhammad v. Lynaugh,* 966 F.2d 901, 903 (5th Cir. 1992).

[24]*Cotton v. Booker,* 166 F.3d 341, 1998 WL 912201 at *1 (5th Cir. 1998)(citing *Johnson v. Rodriguez,* 110 F.3d 299, 306-07 (5th Cir. 1997)).

claim that she is not provided a housing condition at certain room temperatures like other inmates, Hickman again does not list other inmates with her specific medical condition, but instead cites other inmates with such conditions as "chronic obstructive pulmonary disease, congestive heart failure, asthma, bronchitis, emphysema, cancer, Still's disease, and pregnancy." (AC-Supp. 18.). Furthermore, Hickman acknowledges that she has been given a "BOP issued jacket, gloves, and hat." (AC-Supp. 18.).

In sum, plaintiff Hickman has not alleged a violation of her equal protection rights because she has not alleged that she has been treated differently because of some personal or class characteristic such as race or religion, and on each of her three bases for her equal protection claim, she has not shown that she was treated differently than a similarly situated inmate who suffered from the same medical conditions.[25] Therefore, Plaintiffs claims for a violation of equal protection of law must be dismissed.

*Rehabilitation Act*

Hickman's claims for relief under the Rehabilitation Act also fail. Although she has not specified the language she relies upon, Section 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a), provides that no qualified individual with a disability shall be excluded from participation in, denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

---

[25] *See generally Gardea v. Naik,* CA No. H-09-1467, 2011 WL 1103434 (S.D. Tex. March 23, 2011)(granting summary judgment upon Plaintiff's claim that defendant prison doctor violated right to equal protection in denying him medical boots, since inmate-plaintiff had not shown that he was similarly situated "with respect to life function and physical needs" to other inmates who had been given such boots); *Gins v. Pailette,* No.09-0110, 2010 WL 1558959, at *2-3 (W.D. La. April 19, 2010)(Plaintiff's claim that his right to equal protection was violated when he was not transported to hospital at same time as another inmate, rejected since Plaintiff did not allege discriminatory treatment due to race or other improper motive, and he did not allege facts showing that he was in the same medical condition as the other inmate), *appeal dismissed*, 406 F. App'x 933 (5th Cir. 2011); *Kimble v. Kukua,* No. G-05-310, 2008 WL 4443248, at *9 (S.D. Tex. Sep. 25, 2008)("In this case, plaintiff has not shown a violation of his equal protection rights because he has not shown that he was similarly situated to any inmate who suffered the same disabilities and medical conditions and has not shown any purposeful discrimination").

assistance, or activity conducted by any Executive agency.[26] Although the remedy provision of the Rehabilitation Act provides for monetary damages for "any act or failure to act by any recipient of federal assistance or Federal provider,"[27] in interpreting this language, the Supreme Court determined that Congress only intended to waive sovereign immunity against monetary damages for the "narrow category of § 504(a) violations committed by federal funding agencies acting as such-that is, by Federal provider[s]."[28]  In other words, because the remedy provision did not make reference to any "programs or activities," the Supreme Court declined to read the phrase "Federal provider" to include a waiver of damages for anything more than funding activities.[29] Hickman named the defendants in both an individual and official capacity. As noted above, an action against federal government officials in an official capacity is an action against the United States and its agencies, such as the BOP. Thus, any claims for monetary damages under the Rehabilitation Act for alleged discrimination under any program or activity against the Bureau of Prisons are shielded by sovereign immunity.[30] Furthermore, the Fifth Circuit has held that an individual may not be sued in his or her individual capacity under the Rehabilitation Act,[31] rendering claims under the Rehabilitation Act against the defendants in an individual capacity to be without merit. Therefore, all claims against the defendants under the Rehabilitation Act must be dismissed.

---

[26] 29 U.S.C.A. § 794(a)(West 2008).

[27] 29 U.S.C. A. § 794a(a)(2)(West Supp. 2013).

[28] *Lane v. Pena,* 518 U.S. 187, 192-93 (1996).

[29] *Id.* at 193.

[30] *See Collins v. Pigos,* No.1:CV-12-00232, 2013 WL 943119, at *3 (M.D. Pa. March 11, 2013)("the United States' sovereign immunity has not been waived by the Rehabilitation Act except in situations not applicable here [federal inmate's suit]")(citing *Lane,* 518 U.S. at 191-92)).

[31] *See Lollar v. Baker,* 196 F.3d 603, 609 (5th Cir. 1999).  Other courts have also found that the Rehabilitation Act does not permit actions against persons in an individual capacity. *See Hiler v. Brown,* 177 F.3d 542, 545-46 (6th Cir. 1999)(citation omitted); *see also Montez v. Romer,* 32 F. Supp. 2d. 1235, 1241 (D. Colo. 1999).

Therefore, all of plaintiff Joyce Hickman's claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1) and, alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Signed this 8th day of January, 2014.


Reed O'Connor
UNITED STATES DISTRICT JUDGE